**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES L. WOTANIS and,
RENEE B. WOTANIS,

      Plaintiffs,

      v.

PNC BANK, N.A.,

      Defendant.

CIVIL ACTION NO. 3:19-CV-00588

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is a Motion to Dismiss (Doc. 12) filed by the Defendant PNC Bank, N.A. ("PNC"). PNC contends that the Plaintiffs Charles L. Wotanis and Renee B. Wotanis ("Mr. and Mrs. Wotanis" or "Wotanis's") have failed to state a claim upon which relief may be granted on two separate claims under the Real Estate Settlement Procedures Act ("RESPA"). Because the Wotanis's have adequately pled violations of RESPA in Count I of their complaint but have failed to adequately plead violations in Count II, PNC's Motion to Dismiss will be granted in part and denied in part. The Plaintiffs will be given leave to amend.

## I. Background

The facts from the Wotanis's Complaint (Doc. 1), taken as true and viewed in the light most favorable to Mr. and Mrs. Wotanis are as follows:

Charles L. and Renee B. Wotanis, husband and wife, are the owners of real property located at 950 Taylor Avenue, Scranton, Pennsylvania, Lackawanna County ("the Property"). (Doc.

1 at ¶ 7).  In May 2006, Mr. and Mrs. Wotanis entered into a real-estate secured Direct Installment Loan with PNC for the Property in the amount of $153,694.00 at an interest rate of 7.9%, to be paid in monthly installments of $1,463.86.  (*Id*. at ¶ 9).

On December 9, 2012, Plaintiffs received a document from PNC which purported to be a loan modification agreement, offering a reduced interest rate on the loan (4.19%) if Plaintiffs paid a one hundred dollar loan modification processing fee.  (*Id*. at ¶ 10).  In response, on January 18, 2013, Plaintiffs signed and submitted this loan modification offer at their local PNC branch and further authorized PNC to debit one hundred dollars from their PNC checking account to satisfy the modification processing fee. (*Id*. at ¶ 11).

In 2018, Mr. and Mrs. Wotanis noticed that they had nonetheless been paying the initial 7.9% interest rate.  (*Id*. at ¶ 12).  On May 16, 2018, they notified PNC of this "error" and requested more information about the servicing of their loan including what they referred to as the "servicing notes."  (*Id*. at ¶ 12; Doc. 3 Ex. C).  On June 22, 2018, PNC responded to this letter stating that the loan modification offer was never properly accepted due to either the bank never actually receiving the agreement, or, even if received, an omission of the account number on the modification processing fee agreement.  (*Id*. at ¶13; Doc. 3, Ex. D.).  In this same response, PNC provided Mr. and Mrs. Wotanis  with various records of payment history, but did not attach any "servicing notes" instead stating that they were "outside the scope of what can be requested as, to the extent such information exists, it is confidential, irrelevant, or privileged, and the request was overly broad and unduly burdensome."  (*Id*. at ¶15; Doc. 3, Ex. D).

Mr. and Mrs. Wotanis initiated this action on April 5, 2019, alleging two violations of

RESPA, 12 U.S.C. § 2601 *et seq*: failure to adequately respond to a Notice of Error on behalf of themselves (Count I); and failure to adequately respond to a Request for Information on behalf of a larger class of those similarly harmed (Count II). (*See generally* Doc.1). Mr. and Mrs. Wotanis named PNC as the lone Defendant. (*Id*. at ¶ 26). Plaintiffs seek various forms of actual and statutory damage awards for themselves and, as to Count II, for the class they purportedly represent plus costs. (*Id*. at ¶¶ 35-36, 44).

PNC filed its Motion to Dismiss on June 21, 2019, contending that the Wotanis's fail to state a claim upon which relief can be granted because their claims fall outside the scope of the RESPA statute as they do not involve loan servicing, and, in any event, PNC responded to the Wotanis's request for information adequately. (*See* Docs. 12, 13). PNC further contends that no claim has been stated because Mr. and Mrs. Wotanis failed to adequately plead actual and statutory damages under the applicable statute such that they are not entitled to relief. (*See* Doc. 12).

Both Parties have fully submitted briefs in support of their positions and the Motion is ripe for review. (*See* Docs. 13, 17, 19).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000)*. The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to

state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v.*

*County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 650 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.,* 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

### III. Discussion

PNC moves to dismiss both of the claims raised by Mr. and Mrs. Wotanis under Federal Rule of Civil Procedure 12(b)(6) for failing to state plausible claims for relief under RESPA.

RESPA was enacted as a consumer protection statute and it was designed to give home-buyers access to more information about their home mortgages so that they may

protect themselves from any fraudulent or deceptive practices by their mortgage loan servicers. *See Stefanowicz v. Sun Trust Mortgage*, 2017 WL 1103183, at *6-7 (M.D. Pa. 2017), *report and recommendation adopted,* 2017 WL 1079163 (M.D. Pa. 2017); *Wilson v. Bank of America*, 48 F.Supp.3d 787, 798-99 (E.D. Pa. 2014). While its primary purpose was to protect home buyers from "'material nondisclosures in settlement statements,'" RESPA, by its terms, applies to "'the 'servicing' of any 'federally related mortgage loan.'" *Stefanowicz,* 2017 WL 1103183, at *6 (quoting *Cortez v. Keystone Bank, Inc.*, 2000 WL 536666, at *10 (E.D. Pa. May 2, 2000)).

The servicing of any mortgage loan includes any inquiries by the borrower into the application and management of payments towards principal and interest. *Cortez*, 2000 WL 536666, at *10. More specifically, the statute defines servicing as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payment of principal and interest . . . as may be required pursuant to the terms of the loan." 12 USC s 2605(i)(3). Importantly, while requests for loan modifications are not considered inquiries into the application of payments, and are therefore not servicing inquiries, *Schepisi v. Santander*, 2019 WL 699959, at *3 (D.N.J. 2019), requests into the application of payments for a believed modification can be considered servicing inquiries because they relate to the actual management of current payments. *See Cortez*, 2000 WL 536666, at *10 (finding that inquiries into the application of payments to a borrower's account involved the servicing of a loan for the purposes of RESPA). *Grembowiec v. Select Portfolio Servicing, Inc.* further held that inquiries regarding loan modifications can be valid servicing inquiries to the extent the Plaintiff shows contradictory explanations or actions taken by the servicer

with regard to a modification.  2019 WL 3183588, at *5, n.6 (D.N.J. 2019).

Moreover, to seek information from a servicer under RESPA, a borrower first must send the servicer a Qualified Written Request ("QWR").  *Stefanowicz,* 2017 WL 1103183, at *7.  A QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that—(i) includes, or otherwise enables the servicer to identify the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e).  Following the subsequent adoption of 12 C.F.R. § 1024 ("Regulation X"), this definition of QWRs was broadened and now specifically includes Notices of Error and Requests for Information.  *Wilson*, 48 F.Supp3d at 799-800;  *see also* 12 C.F.R. §§ 1024.35, 1024.36; *Bret Binder v. Weststar Mortgage, Inc.*, 2016 WL 3762710, at *5 (E.D.Pa. 2016) (speaking about Regulation X, "the regulations implementing RESPA set out guidance for how mortgage servicers must comply with requests from borrowers to resolve errors with their accounts.").  The response obligations by servicers for these types of requests was also heightened and now include the conducting of a reasonable investigation before a response and, in the response itself, elucidation of all of the reasons why any errors exist or why any information may be unavailable.  *Id*.  Servicers could also, upon receipt of a Notice of Error, simply correct the mistake and let the consumer know the error has been remedied.  *Id*. at 800.

More specifically, Notices of Error entail a borrower notifying their servicer about a potential discrepancy on their account, for which the servicer must either remedy, or, after

a reasonable investigation, inform the borrower about the lack of error or remedy with an accompanying explanation. *Id.* at 800-01. Requests for Information more simply entail a request for relevant information about the borrower's loan, which must be provided, if readily available, or must be provided, after a reasonable investigation. *Id*. at 805-06.

For either type of request, the servicer need not respond if the request is overbroad or implicates "confidential, proprietary, or privileged information." 12 C.F.R. §§1024.35(e)(4), (g)(ii); 12 C.F.R. §§1024.36(f)(ii), (f)(iv). This exception however, only applies to requests which the servicer "reasonably determines to meet any of the enumerated exceptions." *Wilson*, 48 F.Supp. 3d at 806. As such, in *Wilson*, "servicing logs," which may be readily accessible and which are not necessarily overbroad, were found to be outside the scope of the enumerated exceptions. *Id*.

For an otherwise standard request, the loan servicer has 30 days to respond, or otherwise face damages in "an amount equal to the sum of—(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [RESPA], in an amount not to exceed $2000." *Stefanowicz,* 2017 WL 1103183, at *7 (quoting *Andress v. Nationstar Mortg.*, LLC, 2016 WL 75085, at *3 (E.D. Pa. Jan. 7, 2016)). Therefore, to properly recover, the Plaintiffs must "allege that the breach resulted in actual damages." *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006). This means "'specific evidence to establish a causal link between the financing institution's violation and their injuries.'" *Stefanowicz v. Sun Trust Mortgage*, 2018 WL 1385976, at *6 (M.D. Pa. 2018) (quoting *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369 (M.D. Ga. 2011)),

*report and recommendation adopted*, 2018 WL 1384643 (M.D. Pa. 2018). Beyond actual damages, RESPA also allows for additional statutory damages if the Defendant engaged in "a pattern or practice of noncompliance" with the requirements of the RESPA statute. 12 U.S.C. §§ 2605(f)(1)(B), 2(B). For a pattern or practice, "'almost as a matter of definition, a single failure to respond to a Qualified Witten Request does not state a claim for a 'pattern or practice' of doing so.'" *Straker v. Deutsche Bank Nat. Trust*, 2012 WL 7829989, at *12 (M.D. Pa. 2012) (quoting *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp.2d 895, 909 (C.D. Cal. 2009)), *report and recommendation adopted*, 2013 WL 1314021 (M.D. Pa. 2013). *Straker* goes further to say that "the failure to respond to one qualified written request . . . as a matter of law does not amount to a 'pattern or practice' which will support a claim for statutory damages." *Id*.

Therefore, a RESPA claim turns on: (1) submitting a QWR, which can be a Notice of Error or Request for Information; (2) not receiving a timely or adequate response by a loan servicer; and (3) damages. *See Stefanowicz*, 2018 WL 1385976 at *6.

## A. RESPA Notice of Error Violation

PNC claims that the Wotanis's inquiry regarding their loan does not constitute a QWR because it was not a servicing request and instead only pertained to a requested loan modification. (Doc. 12; Doc. 13 at 6-10). Mr. and Mrs. Wotanis's Complaint plausibly alleges, however, that the request they sent to PNC involved the servicing of their loan. (Doc. 1 at ¶¶24-26). Specifically, the Plaintiffs allege that they were told by their local PNC branch that they successfully submitted their modification application and they proceeded to pay PNC money believed to be satisfying this modified loan which would have had the

same monthly payment as their unmodified loan. (*Id*. at ¶¶10-12; *see also* Doc 3. Ex. C).

The Defendant's contention that this was simply a request for a modification, (Doc. 12; Doc. 13 at 6-10), then fails because the Plaintiffs inquiry to PNC, as in *Cortez*, concerned payments on principal and interest believed to be pursuant to a loan modification. 2000 WL 536666, at *10. That they requested information about the status of these payments as they applied to their loan is further evidence of the fact that the request allegedly applied to servicing and not a requested modification. This is different than simply, as PNC suggests, requesting a modification as Mr and Mrs. Wotanis allege: (1) that the modification already existed; (2) that they were assured twice that their modification went through; and (3) that they just wanted their account properly credited. (*See* Doc 3. Ex. C.). Taking these allegations of the complaint as true then, the Wotanis's were not requesting a modification, but were rather, trying to enforce it and, as in *Grembowiec*, trying to resolve the contradictions between how their payments were realistically being applied and what they were told at their local PNC branch. (*Id*.); *see also Grembowiec,* 2019 WL 3183588, at *5.

The Defendant then contends that if the request was in fact a valid QWR, the Plaintiffs claims still fail due to PNC's adequate response, (*See* Doc. 3 Ex. D; Doc. 13 ¶¶ 10-12), and, alternatively, due to the Plaintiffs failure to adequately plead damages. (Doc. 12; Doc. 13 ¶¶ 12-15). In their complaint, the Plaintiffs allege that once receiving their Notice of Error, PNC simply denied that a loan modification existed and further failed to attach the requested loan servicing notes. (Doc.1 ¶13, 33; *see also* Doc 3. Ex. D). The Plaintiffs go on to allege that the Defendant took no further action to respond or investigate the inquiry than to simply say the application was not processed due to a modification processing fee

issue and/or a failure to actually receive the application. (*Id*.). The Plaintiffs then allege that, if PNC conducted a reasonable investigation according to the requirements of Regulation X, it would have discovered the completed modification agreement. (Doc. 1 ¶ 33). Therefore, despite PNC's response, taking all the allegations in the pleadings as true, the Plaintiffs assert a plausible claim that PNC's letter was not complete nor the product of a reasonable investigation and that, despite the letter, PNC never corrected the alleged error with the account.

The Plaintiffs further point out that they handed in their application to their local PNC branch and double checked with the branch that it was properly submitted before sending their QWR, occurrences which were never explained by PNC but which could be the product of a reasonable investigation. (*See* Doc. 3 Ex. C). Even to the extent that the Defendant claims that the servicing notes or other documents were confidential or personal to PNC, requests for servicing notes have been found to be outside this exception and may have served to resolve the Wotanis's issues. *See Wilson*, 48 F.Supp. 3d at 806.

Finally, for their first claim, the Plaintiffs plausibly allege actual damages resulting from the failure by the Defendant to investigate or rectify the alleged errors under RESPA. (Doc. 1 ¶ 35). Specifically, the Plaintiffs claim heightened interest costs on the loan and less equity in the Property due to the underapplication of their payments to the principal balance. (*Id*.). While the Defendant contends that the Plaintiffs fail to allege that PNC actually caused them damages, (Doc. 12; Doc. 13 ¶¶ 12-15), the Plaintiffs clearly allege that their damages are the direct result of PNC's failure to honor the loan modification and failure to respond to their Notice of Error with regards to the same. *See Stefanowicz*, 2018 WL 1385976, at *6.

**B. RESPA Request for Information Violation**

The Defendant finally contends that Mr. and Mrs. Wotanis fail to adequately plead statutory damages for their Request for Information violation. (Doc. 12; Doc. 13 ¶¶ 12-15). For this claim, the Plaintiffs, on behalf of a larger afflicted class, allege that the Defendant failed to adequately respond to their Request for Information and failed to conduct the reasonable search potentially necessary to respond to the same request, in violation of RESPA. (Doc. 1 ¶¶ 38-42). The Plaintiffs further claim that this was done as part of a policy or practice of the Defendant. (*Id*. at ¶ 42). To this end, the Plaintiffs claim no actual damages under the statute, but instead claim only statutory damages pursuant to PNC's alleged "policy or practice" of failing to properly handle Requests for Information. (*Id*.). Further, the Plaintiffs fail to allege any other instance of PNC failing to respond or investigate a request other than their lone personal experience with PNC. (*See generally* Doc. 1; Doc. 3). The Plaintiffs instead allege that PNC's response to their letter is representative of a larger boilerplate response to these requests, which indicates a larger policy or practice at work. (Doc. 1 ¶ 41).

I agree with the Court's decision in *Straker v. Deutsche Bank Nat. Trust*, 2012 WL 7829989, at *12, which states that a single instance of a failure to respond does not, by the very definition of the terms, establish a pattern or policy necessary for claiming statutory damages under RESPA. This says nothing about the reasonableness of the initial request for all servicing notes, which, in line with *Wilson*, was adequately pled as a reasonable request under RESPA. *Wilson*, 48 F.Supp. 3d at 806.

Plaintiffs will be given leave to amend to their complaint pursuant to Federal Rule of

Civil Procedure 15(a)(2), which states that the Court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Absent a finding of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party, [or] futility of amendment,' it is an abuse of discretion to deny leave to amend." *Williams v. Exeter Tp.*, 2012 WL 1038757, at *5 (M.D. Pa. 2012) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). As the Plaintiffs have not previously been granted leave to amend and have not had an opportunity to clarify their claim, it would be an abuse of discretion to deny leave to amend.

### IV. Conclusion

For the reasons explained above, the Motion will be **GRANTED** in part and **DENIED** in part.

An appropriate order follows.


 August 28, 2019                                 /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                      United States District Judge